IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NATIONWIDE MUTUAL FIRE INSURANCE COMPANY | : : : | |
| | : | CIVIL ACTION |
| v. | : : | NO. 09-0303 |
| NOVA REAL ESTATE LLC, LAWRENCE EBUROUH, FELIX EBUROUH, KOFI NKANSA MCHAYA, LLC, TONIA KAY, and KATHLEEN RANALLI | : : : : : | |

**SURRICK, J.**                                                                                   **MARCH  1 , 2011**

## MEMORANDUM

Nationwide Mutual Fire Insurance Company ("Nationwide") filed this action pursuant to 28 U.S.C. § 2201 seeking a declaratory judgment regarding Nationwide's obligations under an insurance policy issued to Nova Real Estate, LLC ("Nova Realty"), with regard to a lawsuit filed by Tonia Kay and Kathleen Ranalli, Administratrix of the Estate of Iziah Walker (hereinafter referred to as "Kay and Ranalli") against Nova Realty, Lawrence Eburouh, Felix Eburouh, Kofi Nkansa, Mchaya, LLC, Tonia Kay and Kathleen Ranalli (collectively, "the Kay Defendants") in the Court of Common Pleas of Philadelphia County (hereinafter "the Kay Lawsuit"). (Compl. ¶ 14, ECF No. 1.) Presently before the court is Plaintiff and Counterclaim Defendant Nationwide's Motion for Summary Judgment. (ECF Nos. 20, 21.) For the following reasons, the Motion will be granted.

1

## I. BACKGROUND

### A. The Kay Lawsuit

On March 1, 2007 Kay and Ranalli filed a lawsuit in the Court of Common Pleas of Philadelphia County seeking damages for injuries sustained as a result of a fire that took place on March 1, 2005, at 6121 Glenmore Avenue in Philadelphia. On March 1, 2005, the Glenmore Avenue property was owned by Defendant Lawrence Eburouh. Kay's son Iziah Walker died in the fire and Kay sustained personal injuries. (Pl.'s Mot. 3.) Kay and Ranalli allege that Kay and her family leased the Glenmore Avenue residence from Nova Realty and the other Kay Defendants. Kay and Ranalli further allege that the fire was caused by a faulty electrical system that Nova Realty negligently failed to repair.

Defendants in the Kay lawsuit deny that Tonia Kay ever signed a lease with them and allege that not only was the property uninhabitable, but that Kay and her family were squatters on the property. The Kay Defendants allege that Kay and her family caused the fire while they were living at the residence illegally. Eburouh asserts that his employee, Robert Rouse, who was related to Kay, allowed the Kay family to live at the Glenmore Avenue residence after he had helped Eburouh evict a tenant from the property. According to Eburouh, Rouse apologized for the fire, and as a result Eburouh never considered that Nova Realty might be liable for the fire. Eburouh considered the claim against Nova Realty to be false or fraudulent.

On October 17, 2008 the attorneys for Kay, Ranalli, and Nova Realty negotiated a settlement of the lawsuit for the total sum of $3,000,000. Tonia Kay's claim for negligent infliction of emotional distress was settled for $1,500,000. The claim of Tonia Kay for personal

injuries suffered in the fire along with the Wrongful Death and Survival Act claims for the death of Iziah Walker were settled for $1,500,000. Separate releases were signed for each $1,500,000 settlement. (Pl.'s Mot. Ex. 1E.) Nova Realty paid $50,000 to Kay and Ranalli. Nova Realty then assigned to Kay and Ranalli all of its rights to proceed against Nova Realty's insurance carriers for the remaining balance of the $3,000,000. (Pl.'s Mot. Ex. 1D.) Kay and Ranalli agreed to forgo their rights to proceed against Nova Realty for the remaining balance of the settlement. (Pl.'s Mot. Ex. 1E.) They also agreed to reimburse Eburouh for the $50,000 out of any recovery from Nova Realty's insurers. (*Id.*)

### B. Notice to Nationwide

On October 29, 2008, more than three and one-half years after the fire, counsel for Kay and Ranalli notified Nationwide by letter of the fire, the lawsuit, the settlement and the assignment of rights. (Pl.'s Mot. Ex. C.) Along with the letter, counsel provided a copy of the complaint from the lawsuit, copies of the two general releases regarding the settlement agreement and a copy of the assignment of rights. (Pl.'s Mot. Exs. 1C, 1D, 1E.) Defendants admit that this letter was the first notice that Nationwide received of the fire, the lawsuit or the settlement. (Defs.' Resp. Ex. 2 at ¶ 39.)

Nova Realty obtained insurance coverage through various insurance companies, including Twin City, Diamond State, and Virginia Surety, in addition to their coverage through Nationwide. (Pl.'s Mot. Ex. 10.) In the summer of 2008 Eburouh contacted the other insurance companies regarding the Kay claims. He did not contact Nationwide until October of 2008. Eburouh stated at his deposition that this was because he thought "their coverage wasn't for what [he] was being sued." (Defs.' Mot. Ex. 9, Eburouh Dep. 49:13-16.)

3

On January 22, 2009, after receiving notification of the Kay claims, counsel for Nationwide sent a letter to Nova Realty and Eburouh denying coverage. (Def.'s Resp. Ex. G, ECF No. 25.) The letter specifically pointed to an exclusion under the Policy for "professional services." (*Id.*) Nationwide asserted that "[t]he claims in the Kay lawsuit fall within the exclusion for 'bodily injury' due to rendering or failure to render any professional service." (*Id.*) The letter also asserted that Nationwide did not consent to the settlement of the Kay lawsuit as required by the Nationwide Policy, and that Nationwide was prejudiced by the late notice of the settlement between Nova Realty and the Kay Plaintiffs. (*Id.*) Moreover, the letter notified Nova Realty and Eburouh that Nationwide would be filing a declaratory judgment action "seeking a declaration that the Nationwide Policy does not provide coverage for the claims in the Kay lawsuit and that Nationwide is not obligated to provide indemnity or to pay any sums for the claims in the Kay lawsuit." (*Id.*)

### C. Coverage Under the Nationwide Policy

Nova Realty was insured under a business owners policy ("the Nationwide Policy") issued by Nationwide for the policy period of May 21, 2004, to May 21, 2005, with liability limits of $500,000 on any one occurrence. (Pl.'s Mot. Ex. 1B.) The fire took place on March 1, 2005, within the period covered by the Nationwide Policy. (Compl. Ex. A.) The Nationwide Policy included property coverage for the Nova Realty office located at 2700 South 70th Street in Philadelphia, Pennsylvania subject to terms, conditions and exclusions of the Policy. (Pl.'s Mot. Ex. 1B.) The Nationwide Policy also includes liability coverage subject to the terms, conditions and exclusions of the Policy. (*Id.*) This liability coverage applied to "bodily injury," "property damage," "personal injury" and "advertising injury" as those terms are defined by the Nationwide

4

Policy.  (*Id.*)

The Nationwide Policy excludes various occurrences from coverage.  (*Id.*)  In the January 22, 2009 letter, Nationwide points to one such exclusion under section B.1.j. of the Policy, which states that the insurance "does not apply to [p]rofessional [s]ervices" or "[b]odily injury . . . due to rendering or failure to render any professional service."  (*Id.* (internal quotations omitted)).  The Policy states that "professional service includes but is not limited to supervisory, inspection or engineering services."  (Pl.'s Mot. Ex. 1B.)

Section E of the Policy, which is titled "Liability and Medical Expenses General Conditions," states that "in the event of [an] occurrence, offense, claim or suit," the policy holder "must see to it that [Nationwide] [is] notified as soon as practicable of an 'occurrence' or an offense which may result in a claim."  (*Id.*)  Section E goes on to state that "[i]f a claim is made or a 'suit' is brought against any insured," the policy holder "must (1) immediately record the specifics of the claim or 'suit' and the date received and (2) [n]otify [Nationwide] as soon as practicable."  (*Id.*)  Section E also provide specific instructions for how to notify Nationwide of any occurrences, offenses, claims or suits.  (*Id.*)  It further provides that "[n]o insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without [Nationwide's] consent."  (*Id.*)

Finally, Part 4 of Section E states that "[n]o person or organization has a right under this policy: a. [t]o join us as a party or otherwise bring us into a 'suit' asking for damages from an insured: or b. [t]o sue us on this policy unless all of its terms have been fully complied with."[1]  (*Id.*)

---

[1] "Us" refers to Nationwide throughout the Nationwide Policy.

## II. LEGAL STANDARD

A party is entitled to summary judgment when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the [party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); s*ee also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Fed. Home Loan Mortgage Corp. v. Scottsdale Ins. Co.*, 316 F.3d 431, 443 (3d Cir. 2003). Where the nonmoving party bears the burden of proof at trial, the moving party may identify an absence of a genuine issue of material fact by showing the court that there is no evidence in the record supporting the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 325 (1986); *UPMC Health Sys. v. Metro. Life Ins. Co.*, 391 F.3d 497, 502 (3d Cir. 2004). If the moving party carries this initial burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(e)(2) (stating that "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must . . . set out specific facts showing a genuine issue for trial"); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (noting that the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts"). The nonmoving party may not avert summary judgment by relying on speculation or by rehashing the allegations in the pleadings. *Ridgewood Bd. of Educ. v. N.E. for M.E.*, 172 F.3d 238, 252 (3d Cir. 1999). "Where the record taken as a whole could not lead a reasonable trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)). When deciding a motion for summary judgment, courts must view facts and inferences in the light most favorable to the nonmoving party. *Anderson*,

477 U.S. at 255. Moreover, courts must not resolve factual disputes or make credibility determinations. *Siegel Transfer, Inc., v. Carrier Express, Inc.*, 54 F.3d 1125, 1127 (3d Cir. 1995).

## III. DISCUSSION

### A. Nationwide's Motion for Summary Judgment

Nationwide argues that under Pennsylvania law there is no coverage under the policy issued to Nova Realty for the settlement of the Kay Lawsuit because Nova Realty failed to provide timely notice of the Kay Lawsuit and the subsequent settlement agreement and Nationwide suffered prejudice as a result of the late notice. Nationwide also argues that it is not obligated to provide indemnification for claims arising from the Kay Lawsuit because Nova Realty and Lawrence Eburouh voluntarily made payments and incurred expenses without Nationwide's consent in violation of the Nationwide Policy. (Pl.'s Mot. 14.) In response, Nova Realty argues that the untimely notice did not prejudice Nationwide. Nova Realty also contends that notice was late due to a Nationwide agent's misrepresentation as to the extent of the coverage of the Nationwide Policy. (Defs.' Resp. 1.)

After a thorough review of the record, we are satisfied that the Defendants failed to comply with the clear terms of the Nationwide Insurance Policy by providing late notice of claims, that Nationwide was prejudiced by the untimely notice, and that therefore Plaintiff is not liable to Defendant for coverage on the claims arising from the Kay Lawsuit. We also conclude that Nationwide is not obligated to indemnify for claims in the Kay Lawsuit due to Nova Realty's breach of the voluntary payments clause of the Nationwide Policy.

7

1. *Late Notice*

"Interpretation of an insurance contract is a matter of law and is therefore generally performed by a court rather than by a jury." *Wagner v. Erie Ins. Co.*, 801 A.2d 1226, 1231 (Pa. Super. Ct. 2002). Where language of an insurance contract is clear and unambiguous, a court must give effect to that language. *Id.* (citations omitted). "Where terms are not defined, we must construe the words in accordance with their natural, plain, and ordinary meaning." *Cordero v. Potomac Ins. Co. of Illinois*, 794 A.2d 897, 900 (Pa. Super. Ct. 2002). If an insurance contract provision is ambiguous, however, the provision must be construed in favor of the insured and against the insurer. *Wagner*, 801 A.2d at 1231 (citations omitted).

As mentioned above, Section E of the Nationwide Policy provides that notice of an "occurrence or event which may result in a claim" must be given to Nationwide "as soon as practicable." (Pl.'s Mot. Ex. 1B.) In addition, Section E states that if a claim or suit is brought, the policy holder must "immediately record the specifics" and notify Nationwide "as soon as practicable." (*Id.*) Such provisions are typical in liability insurance policies, and are "directed at ensuring promptness of notice, maximizing the insurer's opportunity to investigate, set reserves, and control or participate in negotiations with the third party asserting the claim against the insured." 13 *Couch on Insurance* § 186:13 (3d ed., updated Nov. 2010). Evaluation of whether this notice requirement was met requires an examination of "the length of time between the point when the insured knew or should have known of the likelihood of a claim and the point at which the insured notified the insurer of those facts . . . ." *Id.* Notice provisions in insurance contracts which require that notice to insurers of coverage-triggering events be provided "as soon as practicable" are interpreted to mean that the insured must provide notice to the insurer "within a

8

reasonable period of time given the facts and circumstances of each case." *Brakeman v. Potomac Ins. Co.*, 371 A.2d 193, 195 (Pa. 1977); *see also, e.g., Farmers Nat'l Bank of Ephrata v. Employers Liab. Assur. Corp.*, 199 A.2d 272, 274 (Pa. 1964) (holding that under the circumstances, providing notice eight months after the occurrence of an accident was not within a reasonable period of time under an employer liability policy which required an insured to give notice "as soon as practicable"); *Brethren Mut. Ins. Co. v. Velez*, No. 06-1961, 2008 WL 2444505, at *3 (M.D. Pa. June 13, 2008) (stating that waiting three years and four months after an accident or lawsuit to notify an insurance company is unquestionably a breach of a policy provision requiring notice "as soon as practicable"); *Scottsdale Ins. Co. v. Bieber & Assocs.*, 105 F. App'x 340, 343 (3d Cir. 2004) (non-precedential).

In the instant case, the fire occurred at the Glenmore Avenue property on March 1, 2005. (Pl.'s Mot. Ex. 1A ¶¶ 19-20.) On March 1, 2007, the Kay Lawsuit was filed. (*Id.* Ex. 4.) On June 6, 2007, a case management conference was held. (*Id.*) On July 29, 2007, counsel for Kay and Ranalli, sent a letter to counsel for Nova Realty and Eburouh asking that insurance carriers for Nova Realty be notified of the claim. (*Id.* Ex. 10.) On August 28, 2007, the Complaint was filed in the Kay Lawsuit. (*Id.* Ex. 4.) Throughout the spring and summer of 2008 various other insurance companies were notified of the Kay Lawsuit. (*Id.* Ex. 10.) In September 2008, a settlement of the Kay Lawsuit was negotiated by counsel. (*Id.* Ex. 1E.) Finally, on October 29, 2008, a letter was sent to Nationwide notifying Nationwide for the first time of the fire at the Glenmore Avenue property, the Kay Lawsuit, the settlement agreement, and the subsequent assignment of rights. (*Id.* Ex. 1C, 1D, 1E.) More than three and one-half years passed between the occurrence of the fire at the Glenmore Avenue property and the notice to Nationwide. More

9

than a year and a half elapsed between the filing of the lawsuit and notice to Nationwide. We are compelled to conclude that Nova Realty's notice to Nationwide was not reasonable or practicable, and that it violated the terms of the Nationwide Policy.

### 2. Prejudice

As a general rule, where an insured provides late notice under an occurrence policy, an insurance company is relieved of its obligations under the policy only if it can show actual prejudice. *See, e.g., Trs. of Univ. of Pa. v. Lexington Ins. Co.*, 815 F.2d 890, 896-97 (3d Cir. 1987) (citing *Brakeman*, 371 A.2d at 197). "The purpose of the prejudice requirement is to allow an insurer to refuse payment only if its procedural handicap has led to disadvantages, substantive results – in other words, if the insured's violation of its contract has proximately caused its insurer damages." *Univ. of Pa.*, 815 F.2d at 898. Reasonable notice clauses are designed "to protect the insurance company from being placed in a substantially less favorable position than it would have been in had timely notice been provided, e.g., being forced to pay a claim against which it has not had an opportunity to defend effectively." *Brakeman*, 371 A.2d at 197.

"[T]his court may, if appropriate under the facts presented, find prejudice or the lack thereof as a matter of law." *Granary Assocs., Inc. v. Evanston Ins. Co.*, No. 99-5154, 2000 WL 1782544, at *6 (E.D. Pa. Dec. 5, 2000); *see also Continental Cas. Co. v. Castlewood Corp.*, No. 88-4152, 1990 WL 131073, at *2 (E.D. Pa. Sept. 6, 1990) (acknowledging that a court may, if appropriate under the circumstances, find prejudice to an insurer as a matter of law). Defendant cites *Life and Health Insurance Co. of America v. Federal Insurance Co.* for the proposition that "prejudice to the insurer is a question for the jury." (No. 92-6736, 1993 WL 326404, at *2 (E.D. Pa. Aug. 25, 1993)). However, in *Life*, the court acknowledged that "an insurer can be

prejudiced as a matter of law" under certain circumstances. *Id.* at *2. Whether prejudice exists as a matter of law hinges upon the facts of the case.

Prejudice is found as a matter of law where "notice is first supplied when the insured's liability is a *fait accompli*." *United Nat'l Ins. Co. v. Admiral Ins. Co.*, No. 90-7625, 1992 WL 210000, at *6 (E.D. Pa. Aug. 19, 1992). Accordingly, post-settlement notice is prejudicial. As the *Granary* court observed:

> [T]he insurer has a valid claim of prejudice when notice comes after the insured has formally settled the matter. The insurance company would justifiably resist paying a settlement in those circumstances when it was deprived of counsel of its choosing to oversee the matter and to negotiate, if possible, an acceptable resolution to the controversy. On the other hand, [when liability] is clear and the calculation of damages [is] merely an arithmetical exercise, the insurer does not have a valid claim of prejudice.

*Granary*, 2000 WL 1782544, at *7. Pennsylvania forgives untimely notice only where the insurer is "afforded the opportunity to participate in the proceedings arising from a claim before the liability of its insurers becomes fixed." *United Nat'l*, 1992 WL 210000, at *6. In *United National*, the insurer did not receive notice of the underlying claim until five days after settlement. *Id.* The court stated that this timing afforded the insurer "no opportunity to investigate the facts underlying the . . . claim or to participate in the defense of the action or any proceedings connected with it" and that the insurer was therefore "prejudiced as a matter of law." *Id.*

Here, Nationwide was notified nearly a month and a half after the settlement of the Kay Lawsuit. Certainly, counsel for Nova Realty and counsel for Kay and Ranalli were not looking out for Nationwide's interests during the settlement negotiations. Nationwide was deprived of any opportunity to investigate or defend against the claims in the Kay Lawsuit. Nationwide was

11

also deprived of the opportunity to have counsel of their choosing oversee the matter and to help negotiate a resolution. Nationwide argues that it may have had a complete defense based on Eburouh's contention that the Kay family was not living at the Glenmore Avenue property with permission or pursuant to a lease. (Pl.'s Mot. 17.) Nationwide also argues that it was foreclosed from being able to conduct discovery with regard to the circumstances surrounding the fire and the injuries allegedly sustained therein. (*Id.*) For example, Nationwide would have been able to investigate its possible defense that the Kay claims were excluded from coverage under the Policy's exclusion for "bodily injury due to rendering or failure to render any professional service," as Nationwide asserted in its letter denying coverage on January 22, 2009. (Defs.' Resp. Ex. G.) By the time Nationwide received notice, more than three and one-half years after the fire, recollections of witnesses had faded and evidence was obviously less available. (*Id.*) If Nationwide had been timely notified of the fire and the lawsuit, it would have had an opportunity to pursue a number of potential defenses through discovery and expert witnesses. Moreover, it would have been in a position to reasonably evaluate the verdict risk and the settlement value of the case. Nationwide has demonstrated that the receiving of post-settlement notice put it at a significant disadvantage and placed it in a substantially less favorable position than it would have been in had timely notice been provided. This is precisely the type of harm reasonable notice clauses are designed to prevent. *Brakeman*, 371 A.2d at 197. We are satisfied that Nationwide has suffered "a loss of substantial defense opportunities" and "a likelihood of success [] if those opportunities had been available." *Univ. of Pa.*, 815 F.2d at 898 (explaining "likelihood of success" to mean that "earlier notice would probably have led to a more advantageous result").

12

3. *Extenuating Circumstances Excusing Delay*

Extenuating circumstances may excuse a delay in notification provided that there has not been a lack of due diligence. *Brakeman*, 371 A.2d at 195. Defendant argues that Giorgio led Nova Realty to believe that there would only be coverage for incidents occurring at the Nova Realty office, and not for incidents at other locations, and that this misrepresentation excuses Nova Realty's untimely notice. (Defs.' Resp. 15.) Nationwide argues that the delay was not due to misrepresentations by Giorgio, rather it was due to the fact that Eburouh never intended to insure the Glenmore Avenue property and that Eburouh failed to exercise due diligence in failing to even read the Nationwide Policy.[2] (Pl.'s Mot. 19.)

The testimony of Giorgio and Eburouh with regard to their discussions concerning the Nationwide Policy is not particularly enlightening. Neither individual could remember the details of the transaction. Even if we take the facts in the light most favorable to the Defendants, Giorgio's actions were not sufficient to excuse the untimely notice or to overcome Defendant's lack of due diligence. There is nothing in the record of this case to support a finding that Giorgio misrepresented the extent of coverage under the Nationwide Policy. Giorgio testified that although he had no real recollection, he normally would have explained the coverage of the Nationwide Policy to the owner when he met with him in May 2003. (Defs.' Mot. Ex. 11, Giorgio Dep. 41:16-19.) He stated that the policy would cover slip-and-fall accidents (*id.* at

---

[2] Eburouh testified that he bought the Glenmore Avenue property from his father in 2003 or 2004. He testified that a month before he purchased the property, the insurance company that had insurance on the property dropped the coverage because the property was uninhabitable. He further testified that he never fixed the property up and he did not buy any insurance for the property while he owned it. He sold the property two years after the fire. (Defs.' Resp. Ex. 9 at 21- 22.)

42:13-43:8.), but he did not know whether it would cover the negligent acts of employees. (*Id.* at 44:11-19.) Eburouh testified that he never read the Nationwide Policy, except for the Declaration Page, but that he believed his coverage was limited to Nova Realty's 70th Street location. (Eburouh Dep. 51:4-15; 53:11-14.) While there is no evidence that Giorgio provided Nova Realty with a complete recitation of the coverage under the Nationwide Policy, there is also no evidence that he misrepresented the coverage. In addition, in July of 2007 counsel for Kay and Ranalli contacted counsel for Nova Realty and specifically requested that Nova Realty's insurers be notified of the claims in the Kay Lawsuit. Nationwide was not notified until more than a year later. The only explanation for this appears to be that Eburouh thought that the insurance policy that he did not bother to read did not cover the Glenmore Avenue property and the fire. Moreover, he thought that the claims of Kay and Ranalli were false and fraudulent. Under the circumstances we conclude that Nova Realty failed to comply with the clear terms of the Nationwide Policy by providing late notice of claims and that Nationwide was prejudiced by the untimely notice. We also conclude that the untimely notice is not excused by extenuating circumstances. Accordingly, Nationwide is not liable to Nova Realty for coverage on the claims arising from the Kay lawsuit.

    4.  *Voluntary Payments Clause*

  The Nationwide Policy provides that "no insured will, except at that insured's own cost, voluntarily make a payment, or assume any obligation, or incur any expense, other than for first aid, without [Nationwide's] consent." (Pl.'s Mot. Ex. 1B.) Nationwide contends that Defendant breached this clause by entering into a $3,000,000 dollar settlement of the Kay Lawsuit without the knowledge or consent of Nationwide. (Pl.'s Mot. 21.) In addition, Nationwide claims that it

is not obligated to provide indemnity for the claims arising out of the Kay Lawsuit because of this breach. (*Id.*) Defendants argue that because Nationwide was going to deny coverage of the claims, Nova Realty had the right to settle the claim and then seek indemnification. (Defs.' Resp. 16.) Defendants also contend that Nationwide is now admitting coverage by making this argument, and that they are therefore estopped from raising this clause. (*Id.*)

As mentioned above, "[i]nterpretation of an insurance contract is a matter of law and is therefore generally performed by a court rather than by a jury." *Wagner*, 801 A.2d at 1231. Here, the Nationwide Policy specifically states that an insured will not make a voluntary payment, assume an obligation or incur any expense without Nationwide's consent. The policy also states that "no person or organization has a right under this policy . . . to join [Nationwide] as a party or otherwise bring [Nationwide] into a 'suit' asking for damages from an insured" or "to sue on this policy unless all of its terms have been fully complied with." (Pl.'s Mot. Ex. 1B.) Counsel for Nova Realty and counsel for Kay and Ranalli settled the Kay Lawsuit for a sum of $3,000,000 without Nationwide's knowledge or consent. Nova Realty also made a payment of $50,000 without Nationwide's knowledge or consent. (Pl.'s Mot. Ex. 1E; Defs.' Resp. 6.) Nova Realty was in breach of the Nationwide Policy in making these payments without notifying Nationwide. We reject Defendants' contention that Nova Realty had the right to settle the claim. Incurring a settlement obligation without Nationwide's consent is expressly prohibited under the terms of the Nationwide Policy. We also reject Defendants' contention that Nationwide is now admitting coverage of the claims in the Kay Lawsuit. Nationwide is claiming that there is no coverage under the Nationwide policy, and that alternatively, even if there were coverage under the policy, the policy was breached by Defendants. We are satisfied that Nationwide is not

15

obligated to provide indemnity in the Kay Lawsuit.

    **B.**     **Nova Realty's Bad Faith Claim**

Since Nationwide has no obligation to provide insurance coverage for the Kay Lawsuit, we will grant summary judgment to Counterclaim Defendant Nationwide on Nova Realty's remaining claim for bad faith. Nationwide properly denied coverage here. Therefore Nova Realty cannot establish the necessary elements of this bad faith claim. *See, e.g. Morrison v. Mountain Laurel Assurance Co.*, 748 A.2d 689, 691 (Pa. Super. Ct. 2000) (noting where a plaintiff cannot demonstrate that denial of coverage was unreasonable, bad faith cannot be established).

**IV.**     **CONCLUSION**

For the foregoing reasons, Plaintiff's Motion for Summary Judgment will be GRANTED. An appropriate Order follows.

                                                    BY THE COURT:

                                                  _____
                                                  R. Barclay Surrick, J.